UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBIN DENISE MONTA,

                    Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.

CASE NO. C17-5047-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff Robin Denise Monta proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1961.[1] She completed the tenth grade and previously worked as a janitor/custodian. (AR 44-45, 269.)

Plaintiff filed SSI and DIB applications in April 2013, alleging disability beginning

---

[1] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

October 10, 2011. (AR 242-54.) Her applications were denied initially and on reconsideration.

On June 9, 2015, ALJ Cynthia Rosa held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 35-65.) Plaintiff amended her onset date to April 1, 2013. (AR 41.) On September 25, 2015, the ALJ found plaintiff not disabled. (AR 11-26.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on December 2, 2016 (AR 1-15), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's degenerative disc disease of the lumbar spine with stenosis, cervicalgia, and major depressive disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work within the following parameters: lift twenty pounds occasionally and ten pounds frequently; stand, walk, and sit for six hours in an eight-hour workday; occasionally climb ramps

and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, crouch, crawl, and kneel; perform routine work with few changes over time; avoid concentrated exposure to vibrations and hazards; and alternate sitting and standing, while remaining on task, every thirty minutes. With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a package sorter and pricing marker.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff avers error in the consideration of medical opinions, lay witness evidence, her testimony, and at step five. She requests remand for an award of benefits or, in the alternative, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Symptom Testimony</u>

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[2] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ in this case found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely credible. The Court finds several specific, clear, and convincing reasons provided in support of that conclusion.

A.    <u>Medical Evidence</u>

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); Social Security Ruling (SSR) 96-7p and 16-3p. An ALJ may reject a claimant's subjective testimony based on contradictory medical evidence. *Carmickle v.*

---

[2] In Social Security Ruling (SSR) 16-3p, the Social Security Administration (SSA) rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. However, this change is effective March 28, 2016 and not applicable to the September 25, 2015 ALJ decision in this case. The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

*Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008).

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle*, 533 F.3d at 1164. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ reasonably construed the objective evidence in the record as indicating plaintiff is not as limited as she alleged. (AR 17-19.) For example, in July 2013, Dr. Gary Gaffield found restricted motion of the lumbar spine with crepitus, restricted cervical motion with dorsal spams, a positive straight leg-raising test on the right, but no spasms or triggers points or pain on percussion on the thoracic spine, upper extremities free of deformities, intact grip and dexterity, and full lower extremity range of motion. He observed plaintiff rise from chairs and get on and off a table without effort, not struggle to remove footwear, walk on her heels and the balls of her feet, walk in tandem without difficulty, negative straight leg raising when sitting, full muscle strength/bulk/tone in the upper and lower extremities, and unimpaired balance. The ALJ also described, *inter alia*, plaintiff's July 2013 report to Dr. Jennifer Irwin of depression, no energy or motivation, paranoid ideation and auditory hallucinations, but also that she had smoked marijuana the day prior and drank about a fifth of whiskey over two days. Plaintiff was polite and cooperative with good eye contact, logical and goal directed thoughts, normal speech, and fully oriented, recalled seven digits forward and three backwards, and three of three objects after five-minutes, had intact fund of knowledge, and followed a three-step command.

Plaintiff challenges the reliance on the evidence from Dr. Gaffield, stating he had limited information to go on and observed limited ranges of motion. (*See* AR 491.) However, the ALJ acknowledged the restricted range of motion and reasonably interpreted Dr. Gaffield's other findings as objective medical evidence contradictory to plaintiff's testimony as to the extent of her limitations. Even if a contrary interpretation of the evidence could be deemed rational, the ALJ's at least equally rational interpretation suffices to uphold the decision.

B.    Activities

The ALJ found plaintiff's activity level inconsistent with her alleged degree of impairment and disability. (AR 19.) She noted evidence plaintiff does light household chores such as washing dishes, cooking, and laundry, shops, takes the bus, goes to the casino, walks her dog, uses the computer, and embroiders. She found the ability to do chores, walk the dog, and shop inconsistent with the alleged difficulty lifting, standing/walking, bending, and reaching, and indicating the ability to engage in activities consistent with light work. She found the ability to use the computer and embroider to indicate the ability to concentrate and persist, noting plaintiff's testimony she embroiders daily and concluding this indicated plaintiff "can concentrate and persist on tasks when she wants to." (*Id.*) The ALJ found plaintiff's testimony she isolates herself inconsistent with her ability to go to the casino, dance, shop, and ride the bus.

Plaintiff contends there is no evidence as to how often or how long she performs her activities, and that the activities were minimal, did not show an ability to spend a substantial part of the day engaged in physical functions transferable to a work setting, and did not indicate an ability to work. It remains that there are "two grounds for using daily activities to form the basis of an adverse credibility determination": (1) whether the activities contradict the claimant's testimony and (2) whether the activities "meet the threshold for transferable work skills[.]" *Orn*

*v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ noted plaintiff's testimony as to how frequently she embroiders, and reasonably concluded her activities could not be performed if her physical limitations were as significant as alleged and that the discrepancies in her testimony and the evidence diminished the persuasiveness of her subjective complaints and alleged limitations.

C.    Inconsistent Statements

An ALJ may rely on ordinary techniques of evaluation, including inconsistencies in a claimant's statements. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). *See also Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ may consider a reputation for truthfulness and inconsistencies in testimony). The ALJ here noted inconsistent statements as to how plaintiff injured her back and about substance use. (AR 20.)

Inconsistent statements regarding drug and alcohol usage may serve as a basis to reject a claimant's testimony. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). As described by the ALJ, plaintiff reported to Dr. Irwin she was drinking about a fifth of whiskey over two days, while she testified at hearing she only drank two glasses a day; she testified she last used methamphetamine two to three years ago, but reported in 2013 she had not used recreational drugs; she stated she had not used marijuana since she was younger, but testified she used it nightly; and, in November 2014, plaintiff reported using marijuana and methamphetamines "'here and there'." (AR 20 (citations to record omitted).) (*See also* AR 17 (contrasting June 2013 report she smoked marijuana when younger but not in many years and denied current use of other drugs, with her testimony she regularly uses marijuana and was using methamphetamines "until two or three years ago, which would be around 2013.")

Plaintiff contends the ALJ's reasoning fails to account for Washington's July 2014 legalization of marijuana, that her alcohol use is a non-issue given that it was deemed not severe,

1   and that this information should have been presented during the hearing if the ALJ intended to use

2   it to impugn credibility.  However, whether or not deemed a severe impairment, evidence of a lack

3   of candor regarding alcohol or drug use provides support for an ALJ's negative conclusions about

4   a claimant's veracity.  *See Thomas*, 278 F.3d at 959.  Nor does the 2014 legalization of marijuana

5   explain plaintiff's inconsistent reporting.  For example, in July 2013, only one month after denying

6   using marijuana "for many years" (AR 730), plaintiff reported to Dr. Gaffield she smoked

7   marijuana and drank on a daily basis (AR 489) and informed Dr. Irwin she last used marijuana the

8   day prior, did not have a "medical card" allowing for such use, and used it "a couple of times a

9   day." (AR 483.)  The ALJ provided plaintiff the opportunity at hearing to explain inconsistencies

10  in her reporting, inquiring about her use of alcohol, marijuana, and methamphetamines, and asking

11  specifically about her report of drinking a fifth of whiskey every two days.  (AR 47-48, 51.)

12         In relation to the origin of her back injury, the ALJ noted plaintiff's report she slipped while

13  picking up a bucket, her report she fell while she was putting down tables, and her testimony she

14  slipped and fell.  (AR 20 (citing AR 563, 730, 52).)  Plaintiff's largely consistent accounts as to

15  how she injured her back are not reasonably construed as undermining her symptom testimony.

16  (*See* AR 52 (there was something on the floor in the cafeteria and she slipped and fell between the

17  doorway going into the kitchen), AR 274 (she slipped on something while taking a bucket out of

18  the cafeteria to empty it), AR 563 ("She went out to pick up a bucket and she slipped on something

19  on the floor, possibly food."), and AR 730 ("She says that all of this started originally with a fall

20  in the cafeteria at work when she was helping put down tables after lunch.  She slipped on

21  something on the floor and twisted and fell and injured herself that way."))  However, given the

22  other examples of inconsistent reporting, as well as other valid reasons for the overall assessment,

23  the error as it relates to plaintiff's back injury reporting is properly deemed harmless.  *Carmickle*,

533 F.3d at 1162-63. *See also Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case.") (cited sources omitted).

D.     Drug-Seeking Behavior

The ALJ found evidence in the record to suggest plaintiff "may have a problem with her narcotic pain medications." (AR 20.) Dr. Andrew Tsoi, in April 2015, noted plaintiff had been taking "Vicodin daily for almost 2 yrs now," and stated: "At the moment, major problem seems to be her daily use of narcotic agent(s)[.]" (AR 825-26.) On March 31, 2014, plaintiff reported to emergency room providers that she had not filled prescriptions for Prednisone and Ultram she had received one month prior as "she 'does not like to take new medications', and 'only Vicodin' helps her pain." (AR 871.) The care provider found it unclear why plaintiff had not filled her prescriptions for the "identical condition" at issue in her prior, recent visit, and advised her to "follow recommendations if she expects any improvement." (AR 873.) The ALJ found the evidence to suggest plaintiff "may be motivated to report symptoms in order to obtain Vicodin and this undermines her credibility." (AR 20.)

Plaintiff observes that one of the unfilled prescriptions, for Ultram (Tramadol), is "a narcotic like pain reliever." (Dkt. 13 at 16.) She otherwise denies the significance of the evidence relied upon, observing no medical provider opined as to abuse of medications and asserting the ALJ engaged in sheer speculation.

An ALJ may consider evidence of a claimant's drug-seeking behavior. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001), *amended opinion* at 2001 U.S. App. LEXIS 17960 (Aug. 9, 2001). An ALJ is further "entitled to draw inferences logically flowing from the

evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The ALJ here cited to relevant evidence and drew a rational interpretation of possible drug-seeking behavior. This rational interpretation is not properly disturbed. *See, e.g.*, *Massey v. Comm'r SSA*, No. 10-35004, 2010 U.S. App. LEXIS 21508 at * 2 (9th Cir. Oct. 19, 2010) (stating it was unclear whether frequent emergency room visits and erratic disease management was the result of a painkiller addiction or lack of health insurance and financial limitations, but deferring to the ALJ's interpretation of drug-seeking behavior).

E.   Other Reasons

The ALJ included other reasons in support of her conclusion regarding plaintiff's testimony. Plaintiff's initial response to an inquiry as to why she could not work included that she did not have a diploma or car, which were not "relevant factors to support a finding of disability." (AR 19.) Her reports of seeking treatment because of the loss of her home and marriage, for her kids, and for her car, that she had a lot on her shoulders, lost her home, her "'ex' left her, and her children did not see her", suggested her "primary issues are not impairments, but situational stressors and life choices that do not involve a disabling condition." (*Id.*) The ALJ found plaintiff had reported few mental health symptoms relevant to a finding of disability and had not been consistent with seeking and attending mental health treatment, suggesting she has minimal symptoms. The ALJ also found the evidence did not suggest a motivation to work consistently. Plaintiff's Labor and Industries (L&I) claim closed in 2013, she received wage loss benefits for three years, and she stated she had no plans to return to employment and was trying to get disability and retirement benefits. (AR 20.) "The claimant has made no efforts to work and appears to have been content to seek L&I benefits and now Social Security benefits rather than to engage in work activity. This undermines her overall credibility." (*Id.*)

The Commissioner declined to defend the ALJ's reliance on evidence of secondary gain, including the reasons for inability to work unrelated to disability, the failure to look for work, and the perception of greater interest in receiving disability benefits than in working. The Court finds any error harmless in light of the above-described specific, clear, and convincing reasons for the ALJ's assessment. *See Carmickle*, 533 F.3d at 1162-63, and *Molina*, 674 F.3d at 1115.

Neither party addresses, within the context of plaintiff's testimony, the ALJ's statements regarding the reporting of mental health symptoms and the failure to consistently seek and attend mental health treatment. (*But see* Dkt. 13 at 11 (addressing the issue in relation to opinion evidence).) An ALJ may consider a claimant's inconsistent or non-existent reporting of symptoms. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). An ALJ also properly considers evidence associated with a claimant's treatment, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), SSR 96-7p and SSR 16-3p, including unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti*, 533 F.3d at 1039. *But see* SSR 96-7p (ALJ should not draw inferences from failure to seek or pursue treatment without first considering explanations for that failure, including an inability to afford treatment), and *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'") (quoting *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). As discussed below (*see supra* at 19-20), the record provides support for the ALJ's depiction of an inconsistent pursuit of mental health treatment. Plaintiff does not assert any specific reasons for her failure to more frequently report mental health symptoms or to more consistently pursue treatment. The ALJ also properly considered these factors in assessing

plaintiff's testimony.

Medical Opinions

Plaintiff argues the ALJ improperly rejected the opinions of treating naturopath/ chiropractor Thomas Young, treating nurse practitioner and primary care provider Linda Pelland, and examining psychiatrist Dr. Jennifer Irwin. She maintains error in the preference of the opinions of examining physician Dr. Gary Gaffield, and non-examining State agency psychologists Dr. Michael Brown and Sharon Underwood and physician Dr. Dennis Koukol.[3]

In evaluating the weight to be given to the opinions of medical providers, Social Security regulations distinguish between different types of medical and other sources. Pursuant to the regulations in effect at the time of the ALJ's decision, "acceptable medical sources" included, for example, licensed physicians and psychologists, while other non-specified medical providers were considered "other sources." 20 C.F.R. §§ 404.1502, 404.1513, 416.902, 416.913.[4]

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester*, 81 F.3d at 830. Where contradicted by another physician, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v.*

---

[3] The ALJ also assigned some weight to the April 2015 opinions of examining physician Dr. Andrew Tsoi, finding a limitation to light work and moderate limitations of a general nature accommodated by the RFC. (AR 23.) She gave little weight to an estimated period of un-employability of one year, finding it inconsistent with the rest of the opinion offered and with the objective findings on examination, including normal motor functioning, sensation, and normal deep tendon reflexes. (AR 23-24.) Plaintiff does not challenge this assessment.

[4] Regulations effective March 27, 2017, after the ALJ's September 2015 decision, include advanced practice registered nurses, audiologists, and physician assistants as "acceptable medical sources," other licensed heath care workers as "medical sources," and others as "nonmedical sources." 20 C.F.R. §§ 416.902(a), (d), (e), 404.1502(a), (d), (e).

ORDER
PAGE - 12

*Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Less weight may be assigned to the opinions of other sources. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). The opinions of other sources, including nurse practitioners, naturopaths, and chiropractors, can be rejected with reasons germane to each source. *Molina*, 674 F.3d at 1111.

A.   Thomas Young, N.D., D.C.

Dr. Young treated plaintiff and completed evaluation forms on three occasions.[5] In May 2013, he opined plaintiff could return to sedentary work, with a sit/stand/walk at-will option and no repetitive activity or lifting/carrying over five pounds. (AR 476-77.)

In November 2014, Dr. Young opined plaintiff's depression, anxiety, and psychological factors affected her physical condition, frequently affected her attention and concentration to perform even simple tasks, but that she was capable of low stress jobs, adding: "Physically she is very limited – psychologically she would do well with a course of [treatment]." (AR 538.) Plaintiff could walk one-to-two blocks, sit for thirty minutes at a time and about four hours total, stand for fifteen minutes at a time and less than two hours total, and needed periods of walking around during the day (every five minutes, for five minutes at a time) and to "sit/stand/walk and vary positions and activities often and at will during the work day." (AR 538-39.) Plaintiff would need one or two unscheduled breaks, could occasionally lift up to ten pounds and rarely up to twenty pounds, occasionally look down, up, or hold her head in a static position, frequently turn her head right or left, rarely twist, stoop (bend), crouch, or climb stairs, never climb ladders, may have some limitation in reaching given her low back, but did not have significant limitations in reaching, handling, or fingering, and had no manipulative limitations. (AR 540-41.) She would

---

[5] The ALJ stated Dr. Young released plaintiff to return to work in November 2012, but the cited exhibit was removed from the record because it related to a different claimant. (*See* AR 22, 412.)

miss an estimated three days a month. (AR 541.)

In April 2015, Dr. Young opined plaintiff needed to take hourly, ten-minute breaks, could rarely lift less than ten pounds, rarely look down, look up, or hold her head in a static position, could occasionally look left or right, and would miss more than four days per month. (AR 901-02.) A return to work was not expected and plaintiff had "other, disabling, concurrent medical and psychiatric problems[,]" but Dr. Young's "role with this case is for the L5 disc failure which is worsening and patient should consider an application to re-open that claim." (AR 902-03.)

The ALJ gave little weight to Dr. Young's opinions. The opinions were contrary to plaintiff's actual activities, including preparing meals and doing dishes and laundry, and inconsistent with the totality of the objective evidence, including her intact gait and normal muscle strength, bulk, and tone. (AR 22.) Dr. Young offered opinions about psychological "conditions and their effect on plaintiff but he is not a mental health care provider and not qualified to opine about her mental health symptoms." (AR 22 (this statement contained a typographical error of "physiological" conditions).) Also, "Dr. Young is not an acceptable medical source who can establish diagnoses and greater weight is given to Dr. Gaffield's opinion, as he is an acceptable medical source." (*Id.*)

Plaintiff suggests the ALJ's consideration of her activities implies an individual need be unable to prepare a meal, wash a dish, or do laundry in order to be found disabled, and that the ALJ ignored pertinent objective findings, such as abnormal MRI findings and a positive straight leg raise, and improperly played doctor in interpreting the medical record. The Court finds the ALJ reasonably considered evidence of plaintiff's activities – activities extending beyond the ability to prepare a meal, wash a dish, or do laundry (*see, e.g.*, AR 15, 18-19) – and contradictory medical evidence (*see* AR 17-20), as germane reasons for rejecting Dr. Young's opinions. *See,*

*e.g.*, *Tommasetti*, 533 F.3d at 1041 (inconsistency with the medical record), and *Rollins*, 261 F.3d at 856 (inconsistency with level of activity).

The ALJ also properly considered the opinions of Dr. Young while giving greater weight to the opinion of an acceptable medical source. SSR 06-03p (rescinded effective March 27, 2017, after the ALJ's September 2015 decision). Dr. Gaffield opined plaintiff had no limitations in the ability to sit, walk, or stand in an eight-hour workday with adequate breaks and rest periods, could lift up to twenty pounds occasionally and ten pounds frequently, and occasionally perform postural activities, had no manipulative limitations, and would need to avoid stairs and ladders, incline planes, obstacles in her pathway, and irregular surfaces, but could on occasion climb a single flight of stairs or a slight incline plane with a decent railing. (AR 492-93.) The ALJ considered that Dr. Gaffield had the opportunity to conduct an examination and found consistency with his examination findings, including normal strength, bulk, tone, and intact gait, but reduced range of motion in the lumbar and cervical spine. (AR 21.)

Finally, the ALJ properly considered that Dr. Young rendered opinions outside his area of expertise. While an ALJ may not reject a physician's opinion regarding medical limitations solely on the grounds they are outside the doctor's area of expertise, *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), the ALJ may consider area of expertise in determining the weight to give the opinion, 20 C.F.R. §§ 416.926(c)(5), 404.1527(c)(5), as well as whether or not a physician provides any treatment in the area at issue and/or support for the opinion, *Allison v. Astrue*, No. 10-35156, 2011 U.S. App. LEXIS 7024 at *3-5 (9th Cir. Apr. 4, 2011) (if a treating physician offers an opinion outside his or her area of specialization and does not support that opinion, it is entitled to little or no weight). Plaintiff does not identify any support provided by Dr. Young for opinions as to her psychological condition, and Dr. Young, in his final evaluation, clarified his

role as relating to physical impairment (AR 903). The ALJ, accordingly, provided several germane reasons for assigning little weight to the opinions of Dr. Young.

B.    Linda Pelland, ARNP

Treating nurse practitioner Linda Pelland completed a physical RFC questionnaire in December 2014. (AR 704-09.) She identified diagnoses of spinal stenosis and lumbar/brachial neuritis and opined depression and anxiety contributed to the severity of plaintiff's symptoms and functional limitations. (AR 704-05.) Plaintiff's pain or other symptoms would frequently interfere with attention and concentration to perform even simple tasks, plaintiff was incapable of even low stress jobs, and she could sit for fifteen minutes and stand for thirty minutes at one time, sit for about two hours and stand/walk for about four hours total in an eight-hour workday, and needed to walk around approximately every twenty minutes for ten minutes at a time. (AR 705-06.) Plaintiff needed to lie down/recline for about three hours a day, shift at will from sitting, standing, or walking, and take unscheduled breaks twenty times per eight hours, for ten minutes at a time. (AR 706-07.) She could occasionally lift less than ten pounds, rarely look down or up, frequently turn head left or right or hold head in a static position, rarely twist, stoop (bend), or crouch, never climb ladders or stairs, and could reach with either arm, including overhead, 0.5 hours a day. (AR 707-08.) Plaintiff would miss more than four days a month and could not work in cold or wet conditions, with extreme noise, or extreme humidity. (AR 708.)

The ALJ gave little weight to Pelland's opinion, finding it appeared to be based primarily on plaintiff's reports, rather than objective evidence in the record, and stating: "Ms. Pelland's records note that she and the claimant went over the form together and 'evaluated' her pain, function, work tolerance, and psychological association with pain and function." (AR 23 (quoting AR 778).) "At that examination, the claimant had normal mood and affect and was fully oriented."

(*Id.* (citing AR 778).)   The ALJ noted Pelland is not an acceptable medical source who can establish diagnoses and gave greater weight to Dr. Gaffield as an acceptable source.   The ALJ further noted that Pelland and Dr. Young gave opinions not entirely consistent with each other, suggesting they were based more on plaintiff's varying reports than on concrete objective evidence.   For example, Dr. Young believed plaintiff could sit more in a day than stand, while Pelland believed plaintiff could stand more than sit.   This was "just one example of the kind of inconsistencies that undermine both of these opinions."   (*Id.*)

Plaintiff contends the ALJ ignored objective findings documented by Pelland, and recites findings from examinations in June 2013 and July 2014.   The ALJ, however, reasonably relied on the contemporaneous treatment note showing Pelland relied on plaintiff's subjective reports.   (AR 778 ("We also spent 20 minutes going over the paperwork her lawyer needs for her disability hearing.   We evaluated her pain, function, work tolerance, and psychological association with pain and function."))   *See, e.g.*, *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("[T]he treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements."); *Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (quoting *Morgan*, 169 F.3d at 602).   *Cf. Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ "offered no basis" for conclusion medical opinions were based more heavily on self-reports, where letter and evaluation discussed treating providers' "observations, diagnoses, and prescriptions, in addition to . . . self-reports.")   In addition, and as with Dr. Young, the ALJ properly considered the opinions of Pelland, but gave greater weight to

the opinions of acceptable medical source Dr. Gaffield. SSR 06-03p.

The ALJ also properly considered inconsistencies between the opinions of the two treating providers. *Morgan*, 169 F.3d at 603. Plaintiff suggests the differences are more likely the result of two different practitioners who see the patient differently, and that their agreement as to severe functional impairment preventing gainful employment is more significant. Yet, this offers merely a different interpretation of the evidence. Because it is at least equally rational, the ALJ's alternative interpretation withstands scrutiny. (*Compare* AR 537-42 (limitations to thirty minutes of sitting and fifteen minutes standing at a time, less than two hours total of standing/ walking, and about four hours total of sitting, providing for the ability to reach eight hours a day, and finding no need to lie down/recline during the day), *with* AR 704-09 (limitations to fifteen minutes of sitting and thirty minutes of standing at a time, about two hours of sitting and four hours of standing/walking total, the need to lie down about three hours a day, and a limitation to reaching 0.5 hours a day).) For this reason, and for the reasons described above, the ALJ provided reasoning germane to Pelland.

C.    Dr. Jennifer Irwin

Dr. Jennifer Irwin examined plaintiff in July 2013 and assigned a Global Assessment of Functioning (GAF) score of 60 (AR 485), reflecting moderate symptoms or moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR).[6] Dr. Irwin assessed plaintiff as able to perform simple and repetitive, as well as detailed and complex tasks, accept instructions from supervisors and interact

---

[6] The most recent version of the DSM does not include a GAF rating for assessment of mental disorders. DSM-V at 16-17 (5th ed. 2013). While the SSA continues to receive and consider GAF scores from "acceptable medical sources" as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. Administrative Message 13066 ("AM-13066").

with co-workers and the public, perform work activities on a consistent basis without special or additional instruction, and maintain regular attendance. (*Id.*) Dr. Irwin also opined plaintiff would have difficulty completing a normal workday and workweek without interruption from a psychiatric condition and would have difficulty dealing with the usual stress encountered in the workplace "at this time." (*Id.*)

The ALJ assigned little weight to Dr. Irwin's opinion. She agreed plaintiff can perform simple tasks, but found the portion of the opinion regarding an inability to persist, complete a normal workday, and deal with stress not supported by the record. (AR 21-22.) The ALJ noted plaintiff did not follow through with mental health treatment "indicating that she does not believe she has need of this treatment." (AR 22.) The ALJ considered plaintiff's ability to persist at embroidery projects every day and to persist to use the computer.

Plaintiff again suggests the absence of evidence as to how long she engages in activities. However, as noted earlier in the decision, plaintiff testified she occupies herself during the day by sitting in her room, watching television, or doing embroidery, and embroiders "[a]lmost every day[.]" (AR 16-17, 49.) The ALJ reasonably considered evidence of plaintiff's activities contrary to the opinions of Dr. Irwin. *Rollins*, 261 F.3d at 856.

Plaintiff denies her failure to get regular mental health treatment is determinative of the impact of her mental problems. *See Van Nguyen*, 100 F.3d at 1465 ("the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day" was not a substantial basis upon which to deem a physician's assessment inaccurate). She points to evidence showing she sought treatment in November 2014, her discharge a month later after failing to appear for several appointments (AR 710-24), treatment received from a different provider in March and April 2015 (AR 829-53), and her May 2015 report of seeing a counselor

(AR 905). As stated above, an ALJ properly considers evidence associated with a claimant's treatment, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), SSR 96-7p and SSR 16-3p, including unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti*, 533 F.3d at 1039. In this case, the same evidence cited to by plaintiff supports the ALJ's interpretation of the record as showing plaintiff's failure to follow through with mental health treatment, and the decision to discount Dr. Irwin's opinions as to work completion and stress tolerance. In fact, Dr. Irwin deemed plaintiff's problem treatable and the likelihood of recovery guarded, stating plaintiff's mood disorder is complicated by what appears to be a history of alcohol dependency, observing plaintiff was not taking an anti-depressant, and opining her condition could improve in the subsequent twelve months with treatment and compliance. (AR 485.) (*See also* AR 24 (assigning great weight to the opinions of Drs. Brown and Underwood finding plaintiff able to perform simple and some complex tasks, persist for two-hour intervals in an eight-hour workday, and adjust to small changes in her routine) and AR 16 (RFC limitation to performing routine work with few changes over time).)

The ALJ, in sum, provided specific and legitimate reasons in relation to Dr. Irwin. Plaintiff does not demonstrate error in the consideration of this or any other opinion evidence.

<u>Lay Testimony</u>

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen*, 100 F.3d at 1467. The ALJ can reject the testimony of lay witnesses with germane reasons. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996). The ALJ in this case declined to afford significant weight to the testimony of Mark Mangan, plaintiff's former roommate, gave little weight to the testimony of Ken Monta, plaintiff's brother, and gave some weight to the testimony of friends Ben

Ham and Paul Handorff. (AR 20-21.)

Plaintiff does not identify error in the ALJ's assessment of the lay testimony. She takes issue with the ALJ's statement that "[f]amily members and friends are not medically trained to make exacting clinical observations[,]" and notes such testimony remains competent evidence. (AR 20.) Yet, the ALJ did not discount lay testimony as a general matter. Nor did the ALJ err in discussing evidence from "non-medical sources." She accurately noted factors appropriately considered in the assessment of such evidence include the nature and extent of the relationship, whether the statements are consistent with other evidence, and any other factors that tend to support or refute the evidence. (AR 20); SSR 06-3p.

The ALJ further provided reasons germane to each lay witness. She rejected Mangan's lay testimony upon finding it inconsistent with the medical evidence of record. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). She reasonably construed the statement from plaintiff's brother to reflect significant reliance on plaintiff's reports of pain, which the ALJ did not fully accept, as well as minimal familiarity with plaintiff's limitations and functioning on a consistent basis. (*See* AR 307 (describing "one of my visits with my sister[]" and stating: "At other [time] I had called her and she wasn't doing good. She was always in a lot of pain.").) The ALJ accurately described the lay testimony from Ham and Handorff as failing to elaborate as to any specific functional limitations (AR 355 (Ham noticed the decline in plaintiff's ability to maintain everyday normal activities, witnessed the pain she went through with the loss of her employment, and described how plaintiff became homeless, slept in and eventually lost her vehicle) and AR 359 (Handorff watched plaintiff become more and more reclusive and withdrawn, her frustration with her personal health issues, and her sinking into depression)), and reasonably afforded those

statements only some weight, *see Morgan* 169 F.3d at 601 (physician's reports did not show how symptoms or characteristics translated into specific functional deficits precluding work activity).

Step Five

Plaintiff contends error at step five given the inaccurate RFC and incomplete VE hypothetical resulting from the ALJ's improper rejection of medical opinion evidence. Because the Court finds no error in the assessment of the medical evidence, the RFC, and/or the corresponding hypothetical to the VE, this restating of plaintiff's argument does not establish error at step five. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff avers error in the ALJ's misidentification of the Dictionary of Occupational Titles (DOT) number for one of the jobs identified by the VE at hearing. (*See* AR 25 (209.<u>6</u>87-034, rather than 209.<u>5</u>87-034).) However, the VE identified the proper DOT job number at hearing (AR 56) and this typographical error in the ALJ's decision is harmless.

Plaintiff also points to a declaration from a different VE, submitted after the hearing, disagreeing with the VE's testimony at hearing regarding the job of package sorter, and arguing the DOT description is outdated. (AR 392-93.) This declaration does not demonstrate error.

The ALJ bears the burden at step five to provide evidence demonstrating other work exists in significant numbers a claimant can perform given her RFC and vocational factors. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). "An ALJ may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "A VE's recognized expertise provides the necessary foundation for his or her testimony." *Id*. While VEs and sources other than the DOT are authoritative, the DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995). *See also* SSR 00-4p ("[W]e rely primarily on the DOT (including its companion

publication, the [Selected Characteristics of Occupations Defined in the Revised DOT], for information about the requirements of work in the national economy.")  An ALJ must inquire as to whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable.  SSR 00-4p; *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

The ALJ here asked the VE to identify jobs plaintiff could perform and inquired into consistency with the DOT.  (AR 54-64.)  The VE provided testimony as to jobs and noted consideration of the DOT, job observations, and sources used to identify numbers of available jobs.  The ALJ complied with his obligation to confirm consistency with the DOT, and appropriately relied on the VE's testimony.  Plaintiff's VE declaration does not undercut the substantial evidence support for the ALJ's decision.  Plaintiff's VE, unlike the SSA, does not accept the DOT as a reliable source of information as to current jobs and, at best, provides an alternative opinion regarding the package sorter job and employer hiring preferences.  This alternative opinion does not suffice to demonstrate the unreliability of the VE's testimony.

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>29th</u> day of August, 2017.

Mary Alice Theiler
United States Magistrate Judge